UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE ELIZABETH KUEHN,

                Plaintiff,                Civil Action No. 18-10369
                                                      Honorable Sean F. Cox
                                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 18]**

Plaintiff Nicole Kuehn ("Kuehn") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #16, 18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Kuehn is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #18**) be **DENIED**, Kuehn's Motion for Summary Judgment (**Doc. #16**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

**II.     REPORT**

   **A.     Background**

Kuehn was 23 years old at the time of her alleged onset date of August 1, 2012, and at 5'2" tall weighed between 135 and 165 pounds during the relevant time period. (Tr. 64, 223, 233). She completed high school but had no further education. (Tr. 44, 224). She worked in maintenance for a parking structure, and as a supervisor at a garden shop, but she stopped working in August 2014, allegedly because of her medical conditions. (Tr. 44, 49-50, 223-24). She now alleges disability primarily as a result of fibromyalgia, posttraumatic stress disorder ("PTSD"), and borderline personality disorder. (Tr. 223).

After Kuehn's applications for DIB and SSI were denied at the initial level on August 7, 2015 (Tr. 120-35), she timely requested an administrative hearing, which was held before ALJ Anthony Smereka on September 12, 2016 (Tr. 41-91). Kuehn, who was represented by attorney Elizabeth Warren, testified the hearing, as did vocational expert ("VE") John Stokes. (*Id.*). On January 30, 2017, the ALJ issued a written decision finding that Kuehn is not disabled under the Act. (Tr. 20-35). On December 1, 2017, the Appeals Council denied review. (Tr. 1-6). Kuehn timely filed for judicial review of the final decision on January 30, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Kuehn's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

   **B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Kuehn is not disabled under the Act. At Step One, the ALJ found that Kuehn has not engaged in substantial gainful activity since August 1, 2012 (the alleged onset date). (Tr. 22). At Step Two, the ALJ found that she has the severe impairments of fibromyalgia, anxiety and depression, borderline personality disorder, and

urinary incontinence. (*Id.*). At Step Three, the ALJ found that Kuehn's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 23).

The ALJ then assessed Kuehn's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: should avoid hazards, including work at unprotected heights or around dangerous moving machinery; no climbing of ladders, ropes, or scaffolds; limited to jobs that do not require driving in the course of employment; limited to unskilled work, meaning the ability to perform simple, routine, repetitive tasks, and work that needs little or no judgment to do simple duties that may be learned on the job in a short period of time; and restricted to jobs that do not require working with the general public, more than occasional contact with coworkers and supervisors, fast production pace work where the pace is set by others, more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, or concentrated exposure to vibration. (Tr. 25).

At Step Four, the ALJ found that Kuehn is not capable of performing any of her past relevant work. (Tr. 33). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Kuehn is capable of performing the jobs of small products assembler (126,000 jobs nationally), housekeeping cleaner (367,000 jobs), and machine feeder (74,000 jobs). (Tr. 34). As a result, the ALJ concluded that Kuehn is not disabled under the Act. (Tr. 35).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.     Analysis**

In her motion, Kuehn argues that the ALJ violated the treating physician rule when he failed to provide good reasons, supported by substantial evidence, for discounting the opinions of her treating psychiatrist, Daniel Healy, M.D. (Doc. #16 at 17-23).[1] The treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)). Those reasons "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

---

[1] Kuehn advances other two arguments in her motion for summary judgment: specifically, that the ALJ failed to incorporate her need for a service dog into the RFC finding, and that remand is required pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new evidence first submitted to the Appeals Council. (Doc. #16 at 24-27). Because the Court is recommending remand on other grounds, it need not pass on these alleged errors. On remand, however, the ALJ should thoroughly consider both of these issues.

6

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *5 (July 2, 1996)).

In this case, Kuehn's treating psychiatrist, Dr. Daniel Healy, issued two opinions. On September 18, 2015, Dr. Healy opined that Kuehn:

> … has been diagnosed with Major Depressive Disorder, Borderline Personality Disorder, and Posttraumatic Stress Disorder. She is currently totally disabled, as she has trouble being around people. She is anxious and hypervigilant. I am prescribing multiple antianxiety agents, a sleep medication and an antidepressant in the hopes that she can be around people more.

(Tr. 1080). Approximately one year later, on August 4, 2016, Dr. Healy completed a Mental Residual Functional Capacity Assessment, in which he opined in greater detail as to Kuehn's ability to sustain activities "<u>over a normal work day and work week, independently, appropriately, and effectively</u>" and "consistently" over an eight-hour work day, five-day work week. (Tr. 784-86 (emphasis in original)). Specifically, Dr. Healy opined that Kuehn has "extreme" limitations in the ability to understand, remember, and carry out detailed instructions, which may or may not be repetitive; maintain attention and concentration for at least two straight hours, with at least four such sessions in a workday; work in coordination with or in proximity to others without being distracted; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rests; interact appropriately with the general public or customers; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to unexpected changes in the work setting. (Tr. 784-85). Dr. Healy also opined that Kuehn has "marked" limitations in other key areas, including the abilities to:

7

maintain attendance and be punctual within customary tolerances; sustain ordinary routine without special supervision; ask simple questions or request assistance from supervisors; and respond appropriately to expected changes in the work setting. (*Id.*). Finally, Dr. Healy opined that, for Kuehn, "a routine, repetitive, simple, entry-level job would actually serve as a stressor" that would, in all likelihood, increase her psychological symptoms. (Tr. 786).

The ALJ acknowledged both of Dr. Healy's opinions in his decision. With respect to Dr. Healy's September 2015 opinion, the ALJ gave it "little weight" because it was purportedly inconsistent with the doctor's treatment notes, which the ALJ characterized as revealing "normal mental status examinations" and "no significant problem [] with being around people …." (Tr. 30).[2] Similarly, the ALJ gave Dr. Healy's August 2016 opinion only "limited weight," finding that it was "vague" in that he "completed the form with check mark responses without any specific explanations as to his findings," and that it was not consistent with "other objective findings and [Kuehn's] treatment history …." (Tr. 30-31). Kuehn now argues that the reasons articulated by the ALJ for discounting these opinions are not supported by substantial evidence.

To begin with, Kuehn argues that, contrary to the ALJ's observation, Dr. Healy's August 2016 opinion is not vague but, in fact, is quite specific as to her limitations. (Doc. #16 at 20). This is because the form itself defines the terms used within it and, thus, very specifically articulates Dr. Healy's opinion as to Kuehn's abilities and limitations. (Tr. 784-86). For example, an "extreme" limitation meant "that the activity is totally precluded on a sustained basis and would result in failing after even short duration, e.g., 5-15 minutes." (Tr. 784). A

---

[2] The ALJ also noted that "the determination of whether a claimant is disabled is an issue that is reserved to the Commissioner." (Tr. 30 (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)). Kuehn does not challenge this aspect of the ALJ's analysis. (Doc. #19 at 2). But, even setting aside Dr. Healy's opinion that Kuehn is "currently totally disabled" (Tr. 1080), there are other aspects of this opinion that the ALJ was required to consider and weigh pursuant to the applicable regulations.

"marked" limitation meant "that the activity is not totally precluded but is substantially impaired," that is, it could only be performed at <80% of the expected or normal levels, and could only be engaged in occasionally or seldom during an eight-hour work day. (*Id.*). In characterizing Dr. Healy's opinion as vague, the ALJ apparently overlooked these definitions, which provide the very specificity he found missing. Moreover, in discounting Dr. Healy's 2016 opinion as lacking "specific explanations as to his findings[,]" the ALJ also overlooked the fact that Dr. Healy listed Kuehn's diagnoses as major depressive disorder, borderline personality disorder, and PTSD. (Tr. 786). While the Commissioner argues that Kuehn's "diagnoses do not – standing alone – provide support for Dr. Healy's opinion of [her] mental abilities[,]" (Doc. #18 at 10), the fact remains that Dr. Healy did more than simply list Kuehn's diagnoses; instead, he opined that, *because of* these impairments, the stress of even a simple, routine, repetitive position would exacerbate Kuehn's mental health symptoms.[3] (Tr. 786). For these reasons, the ALJ's decision to discount the 2016 opinion as "vague" is questionable, at best.

---

[3] As Kuehn points out (Doc. #16 at 20-21), Social Security Ruling 85-15, recognizes this very possibility, stating, in relevant part:

> Individuals with mental disorders often adopt a highly restricted and/or inflexible lifestyle within which they appear to function well. Good mental health services and care may enable chronic patients to function adequately in the community by lowering psychological pressures, by medication, and by support from services such as outpatient facilities, day-care programs, social work programs and similar assistance.
>
> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

*Soc. Sec. Rul. 85-15*, 1985 WL 56857, at *6 (Jan. 1, 1985).

9

More troubling, however, is the ALJ's decision to discount Dr. Healy's opinions as inconsistent with his treatment notes – which the ALJ characterized as revealing "normal mental status examinations" and "no significant problem [] with being around people" – and with other, unspecified "objective findings." (Tr. 30-31). By way of background, the record indicates that Kuehn experienced serious mental health symptoms in 2012 and 2013. (*E.g.,* Tr. 350-51 (presenting to the emergency room in October 2012 with anxiety, excessive worry, and "psychosis including paranoia"), 288 (complaining of worsening depression, fleeting suicidal ideation, and panic attacks in social situations in November 2013)). Record evidence suggests that Kuehn's symptoms worsened in 2014. (*E.g.,* Tr. 828 (complaining of worsening anxiety and expressing interest in therapy in October 2014), 816-20 (complaining of crying spells and isolating behavior; referred to a psychiatrist at Catholic Social Services in November 2014), 801 (reporting increased anxiety and an inability to get out of bed after beginning "trauma therapy" in December 2014)).

Kuehn then presented to the University of Michigan emergency room on January 28, 2015, reporting suicidal ideation, self-injurious behavior, PTSD, paranoia, and agoraphobia. (Tr. 392-96). She was admitted and subsequently transferred to Monroe Regional Hospital, where she remained in-patient until February 11, 2015. (Tr. 306). It was noted that Kuehn – a survivor of abuse – was having increasing flashbacks after starting therapy in December 2014, with her depression and thoughts of self-harm worsening. (Tr. 308). She was stabilized on medication during her hospital stay, and her Global Assessment of Functioning ("GAF") score increased from 25-28 (on admission) to 45-50 (at discharge). (Tr. 306, 308-09).

After her discharge, Kuehn began treating consistently at the Washtenaw Community Health Organization ("WCHO"), where Dr. Healy is employed. At a psychiatric evaluation

conducted on March 19, 2015, Kuehn reported abuse by her mother (treating her as "a slave," keeping her locked away) and sexual abuse by her father at her mother's direction. (Tr. 410-15). At age 12, Kuehn was removed from her home, and her father faced charges of sexual abuse, but he was found not guilty at trial when the evidence was insufficient for a conviction. (Tr. 411, 412). Kuehn related suicidal thoughts, feeling isolated, depression, crying spells, nightmares, and dissociations stemming from PTSD. (Tr. 411). On mental status examination, she was cooperative, with spontaneous speech and a tearful affect. (Tr. 413). Her diagnoses included major depressive disorder, PTSD, and borderline personality disorder; it was noted that she had been "affectively unstable for some time with limited response to many medications"[4]; and she was prescribed numerous medications, including clonazepam, duloxetine, mirtazapine, prazosin, and trazodone. (Tr. 414-15).

At a May 28, 2015 medication review, Kuehn reported continued nightmares, difficulty sleeping, and excessive worry. (Tr. 1076). Her mental status examination was mostly normal, but several medications nevertheless were increased. (Tr. 1077-79). At her next medication review, Kuehn reported continued anxiety and depression, difficulty sleeping, and a lack of motivation. (Tr. 1072). On mental status examination, Dr. Healy noted that Kuehn's speech was normal, but her manner was anxious, she had blunted affect, and her mood was "down." (Tr. 1073-74). On September 18, 2015, Kuehn reported that her sleep had not improved, despite medication adjustments, and it was observed that she had had a "cutting" episode in August. (Tr. 770). On examination, Dr. Healy noted that Kuehn's manner was anxious and her affect was constricted. (Tr. 771-72). The same was true at Kuehn's next medication review, on October 16, 2015. (Tr. 755-56).

---

[4] This observation is repeated consistently in Kuehn's treatment notes from WCHO. (*E.g.*, Tr. 487, 646, 689, 719, 737, 757, 773, 1047, 1075, 1079).

On November 13, 2015, Dr. Healy noted that Kuehn had missed group therapy over the past month due to stress. (Tr. 734). On mental status examination, her speech was spontaneous, but her manner was reserved, she had retarded kinetics, and her affect was blunted. (Tr. 735-36). Dr. Healy and other WCHO staff made similar observations at mental status examinations performed over the next several months. (Tr. 717-18 (anxious and reserved manner, retarded kinetics, tearful and blunted affect in January 2016), 687 (anxious and reserved manner, retarded kinetics, anxious and constricted affect in February 2016), 655 (cooperative and dramatic behavior, soft speech, depressed mood, and fair-poor impulse control in April 2016), 644-45 (anxious manner, retarded kinetics, anxious and constricted affect in June 2016), 1044-45 (anxious manner, retarded kinetics, anxious and constricted affect in August 2016)). Moreover, just a couple of weeks after Dr. Healy issued his August 4, 2016 opinion – which, according to the ALJ, is inconsistent with "other objective findings and the treatment history" – Kuehn again presented to the University of Michigan emergency room for "worsening depressive symptoms and homicidal ideation." (Tr. 1140).

As set forth above, the ALJ considered Dr. Healy's opinions, in which he opined, *inter alia*, that Kuehn "has trouble being around people," "is anxious and hypervigilant," and has "extreme" limitations in the ability to understand, remember, and carry out detailed instructions; work in coordination with or in proximity to others; complete a normal workday and work week without interruptions from psychologically based symptoms; interact appropriately with the general public or customers; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to unexpected changes in the work setting. (Tr. 30-31, 784-85, 1080). However, the ALJ gave these opinions little weight, finding them to be inconsistent

with Dr. Healy's own treatment notes, which purportedly revealed "normal mental status examinations," showed "no significant problem [] with being around people," and otherwise inconsistent with "other objective findings and [Kuehn's] treatment history …." (Tr. 30, 31).

As set forth above, however, the reasons articulated by the ALJ for discounting these treating physician opinions are simply not borne out in the record. Although the Commissioner cites some instances in which Kuehn was "pleasant and cooperative" with good eye contact and normal speech (Doc. #18 at 13-14), mental status examinations performed by Dr. Healy or other WCHO staff members were routinely abnormal, with findings of an anxious and/or reserved manner, retarded kinetics, and a tearful/anxious/blunted/constricted affect. (Tr. 644-45, 687, 717-18, 735-36, 1044-45). Similarly, the record is replete with evidence that Kuehn has significant difficulty interacting with others and being around other people. (Tr. 411 (reporting unstable relationships as an adult, feeling isolated), 801 (unable to get out of bed to take her children to school), 816-20 (crying spells and isolating behavior), 1051 (paranoid delusions that people may be following her or monitoring her movement with cameras"), 1076 (finds group therapy challenging, "as they were working on interpersonal effectiveness skills and [she] has difficulty being around people")). Given the existence of all of this evidence, the Court simply cannot find that substantial evidence supports the ALJ's decision to discount Dr. Healy's opinions as inconsistent with his treatment notes and other objective findings.[5] (Tr. 30, 31). As such, remand is required.

---

[5] The record also contains a letter from Dr. Healy, dated February 14, 2017, in which he clarifies that his notes reflect his assessment of Kuehn's "symptom severity when she is at home (since she does not leave her home)." (Tr. 16). He further indicated: "[W]hen I am asked to assess Ms. Kuehn's ability to work, I have to take into account her incapacitating anxiety symptoms when she is around other people. She would have significant functional impairment if she tried to work, and my disability assessment reflects this fact." (*Id.*). Although this letter was authored after the ALJ's decision, its import should be fully considered on remand.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #18**) be **DENIED**, Kuehn's Motion for Summary Judgment (**Doc. #16**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: September 25, 2018         s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                  United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2018.

                                          s/Eddrey O. Butts
                                          EDDREY O. BUTTS
                                          Case Manager